May it please the court, Eckley Keech on behalf of the appellants, plaintiffs, Merrin and Sean Holmes, Mr. Zimmer, Mr. Sangiamo. The issue presented today can be simply stated that the lower court erred when it held that subsection 22 of the Vaccine Compensation Act applies to the parent's claims. If subsection 22 does not apply, then the decision of the lower court granting summary judgment must be reversed and the case remanded and allowed to proceed under Nevada Products Liability Law, which is set out in Allison v. Merck. The lower court specifically stated that it did not apply the law in Allison because it felt subsection 22 controlled. What is not at issue is whether the parents are prevented by the Vaccine Act from bringing their state tort law claims. It's conceded they can bring the claims. The disputed issue is whether the parent's state tort law claims are subject to the limitations and defenses set forth in subsection 22. The court's order granting partial summary judgment concedes that the parents have a claim under the Nevada Wrongful Death Statute, that the parent's claim falls outside the act, and that the parents did not take the vaccine and thus did not suffer a, quote, vaccine-related injury or death as stated and defined in the statute. Clearly, the only people who suffer a vaccine-related injury or death, as this term is used in the Vaccine Act, are those that took the vaccine. Justice Breyer makes it clear in Schaefer that the term vaccine-related death or injury, as used in the act, means the child who received the vaccine, not the parents. Merck wants this court to take subsection 22 out in a vacuum and say that the term vaccine-related injury or death means something other than what it means, as Justice Breyer stated in Schaefer. It's my understanding, counsel, and I just want to make sure, it's my understanding that you did not challenge here that the defendants complied with the regulatory obligation. That's correct, Your Honor. It's also my understanding that you never did argue that the defendant improperly prepared the vaccine. Correct, Your Honor. If that's so, there are claims that you can go forward with in the state court, are there not? Your Honor, there are, and one of those is a strict liability claim because subsection 22, which is essentially Congress' adoption of comment K for the Vaccine Compensation Act, does not apply to the parents. And so we do believe we're entitled to pursue our strict liability tort case. Well, but I'm not asking you about whether if we decide against you on this particular claim or for you on this claim, whether you have a claim. I'm saying there are claims you can continue to proceed with in the district court, even if you were to lose this particular action. Isn't that true? I don't think that's correct, Your Honor. You didn't allege any claims other than the manufacturing defects, failure to warn practitioners? No, no, Your Honor. We alleged other claims. However, effectively, when the lower court determined that subsection 22 applied and that was the controlling law, that essentially eviscerated the remaining claims. The truth is the other claims that were alleged were ancillary and not truly what the fundamental basis of our case was. The fundamental basis of this case was and always will be, Your Honor, that the parents have an independent right to bring a claim under the wrongful death statute and that that law is governed by Allison v. Merck and 402A of the restatement, which says if you put the product in commerce, you're going to be held strictly liable if it causes an injury. Because in Allison v. Merck, Nevada Supreme Court specifically held we refuse and decline to adopt comment K. And so in the absence of the court's finding that subsection 22 controls, we really do not have any viable claims to pursue, with all due respect, Your Honor. Well, I guess my worry is that there are, being an old Idaho lawyer, there are claims that one could bring without having to rely on manufacturing defect failure to warrant. Well, Your Honor, we brought claims such as breach of warranty, which were also dismissed, fraud, which we did not have any, we alleged, but we did not have any allegation, I mean, in fact, substantially to support it. The basis of this claim was, as I stated, Your Honor, the little boy suffered a vaccine-related injury. The parents, he moved forward under the Compensation Act. The Act does not prevent the parents from seeking their own independent claims, and the parents have sought their wrongful death statutory claim under Nevada law, which is stated in Allison v. Merck. Your Honor, the reason, the court relied upon three district court cases in deciding that subsection 22 applies as controlling law. Those were Rusewitz, Sykes, and Blackman. And in each of those cases, each of those cases, the decision only deals with the claims of the injured child. None of those cases ruled that the parents' claims would be subject to subsection 22. However, you will agree with me, won't you, that Sykes, that Blackman, that Militrano, that Wright v. Aventis-Pasteur really talk about recovery not only for the one who had this particular vaccine, but for parents and for others who may have had injury. Your Honor, respectfully, I have to disagree with you on that. I don't think Sykes says that in any way. On the contrary, I think that Sykes says that in the event a plaintiff seeking compensation for vaccine-related injuries does not accept the judgment of the vaccine court and elects to pursue claims in state or federal court, the Vaccine Act includes certain limitations on state court claims. The limitations are stated in subsection 22. In sum, a vaccine-injured plaintiff who withdraws from the NVICP is limited by the Vaccine Act and its state law claims he can pursue against a vaccine manufacturer. The Sykes Court couldn't have been stated any clearer, Your Honor, when a vaccinee does not accept the judgment of the vaccine court. The Act provides limitations on the state court claims available, which are set forth, the limitations set forth in subsection 22. Let me ask you another question. Yes, Your Honor. Which is a little bit off the point, but something maybe I'd like at least your advising about. In Holmes American Products Corp. v. Ferrari, which is before the Supreme Court, it's the 688 Southeast 2nd 236 case from Georgia. Yes, Your Honor. That's before the Supreme Court. In that case, the Georgia courts held that the Act did not preempt all design defects. However, as I understand it, the Supreme Court has suggested to counsel for the government that they should provide a brief in that particular case, and that at this point the solicitor hasn't provided the brief, and other briefs have been filed. Do we need to await that decision as to whether to take that on in the Supreme Court rather than make this decision now? Respectfully, Your Honor, I do not think you do, and I'll tell you why. Because Ferrari has been looked at by other courts, and in particular recently the Third Circuit and Brusilowitz. They looked at Ferrari, too. And the Third Circuit basically said in Brusilowitz that all the design defect claims are barred, except, Your Honor, what they were talking about, and it's clear they were talking about it, are the claims that could be brought under the Act are barred by subsection 22. If you can't bring a case under the Act, you're not barred. And if I may read from Brusilowitz, Your Honor, it clearly makes that point where it's staged. Well, I guess you're saying no to my question. You shouldn't wait. This is something we can decide without waiting. That was the end result of the question, and no. That's what you're saying. Now, my real problem here is that I understand your argument, but the argument really is that I should read behind the statutory language here and suggest that because the statutory language may not necessarily allow the parents to bring the claim under these sections, that that should absolutely say that the statutory language would allow them to do something else. However, I see no language in the statute to support your argument. That's my worry. If I read the clear and unambiguous language of the statute, I can't get there. Your Honor, I hear that. I disagree with you again, respectfully, and let me tell you why. Tell me the language that you're reading that gets me there. Your Honor, I would start with the table of contents and the index that deals with subchapter 19 vaccines, because you've got subpart A, which is the program requirements, and then it lists here's what you do. You have to file a petition, and here's the table, and here's how you make your claim. Then, as the court in Brucewicz talks about, you go to subpart B. In the cases where the injured individual who received a vaccine does not want to accept the judgment, subpart B is titled Additional Remedies, and subpart B lists three sections, subsection 21, which says how you bring the action, subsection 22, which puts comment K forward, and subsection 3, which talks about the trifurcated trial. Well, Your Honor, they say Additional Remedies. With all due respect, Your Honor, if subpart B, where subsection 22 is contained, is under the heading Additional Remedies, that presupposes that someone who that subsection applies to had a remedy. The parents have no remedy under the Act. The Act cannot apply to the parents, and Justice Breyer, Your Honor, in Schaefer, made it clear that the term vaccine-related death or injury as used in this Act means the person who received the vaccine and does not mean someone who did not receive the vaccine. And so when you ask me to point to specific language, I can point to it says Additional Remedies. Tell me an additional remedy, with all due respect, that the parents are getting because they had a prior remedy. They did not. Justice Breyer makes it clear that term, that term of art, vaccine-related death or injury as used in subsection 22, only applies, only applies to someone who received the vaccine. It cannot apply to the parents, and he so stated in the First Circuit, and no court has ever looked at that and disagreed with that position. And when you look at the way. Counsel, you are over your time, so I'll give you a couple minutes for a bottle. Thank you, Your Honor. May it please the Court, Dino Sangiamma for the defendant, Apelli Murk. Your Honor, Mr. Keach stated the issue correctly on this appeal. The issue is whether the district court was correct in applying section 22b to the parents' claims in this case. In my allotted time, I want to, in addition to answering the Court's questions, I want to show that the district court's decision to apply section 22b was correct. It was correct because the language is clear that section 22b applies to a case like this. Do you mind starting with the question of whether or not we ought to wait for Holmes? Your Honor, I do not think that this Court should wait for Ferrari. And the reason I say that is this. The issue in Ferrari related really to whether design defect claims are preempted by section 22b, whether it's possible to bring a design defect claim in light of section 22b. And there really was no meaningful design defect claim in this case. So it's on that basis, Your Honor, that I do not think it is necessary to await the decision in Ferrari. I think it is helpful to think about not just the clarity of the application of section 22b, but also really the reasonableness and the fairness of section 22b. And, of course, the framework here is that the Court is to apply Congress's language. But it is also where the application of Congress's language here leads to a reasonable and fair application of law. It's particularly important to think, I would submit, Your Honor, about just exactly what it is that section 22b does. Section 22b itself did not eliminate the plaintiff's claim. It did not eliminate the plaintiff's claims itself. The reason why the plaintiff's claims could not stand in light of section 22b is that section 22b created a presumption, and it was a presumption that the defendants had to earn. We had to earn it by showing that we had complied with our regulatory obligations. And that presumption was only a rebuttable presumption. If the plaintiffs had been able to come forward with proof that there was some wrongdoing by Merck, that Merck had withheld information from the FDA, or really even that Merck, if plaintiff could show it by clear and convincing evidence, had displayed a lack of due care, that would have been a basis for the plaintiffs to overcome the presumption. Plaintiffs tried to make that showing. There was extensive discovery of Merck. Plaintiffs argued to the district court that the plaintiffs had evidence that Merck had engaged in that kind of wrongdoing, and the district court found otherwise. And the plaintiffs don't challenge that finding on appeal. What's left on appeal is simply the question of whether section 22b applies to this claim. And if it does, then the correct result is affirmative. As Your Honor pointed out in the questioning, the application of section 22b to a case such as this is clear. The language of section 22b speaks in terms of the section being applied to civil actions for damages arising from a vaccine-related injury or death associated with the administration of a vaccine. There's a nucleus in there of vaccine-related injury. And really, if the Court looks at the definition of vaccine-related injury at section 33.5 of the statute, that alone covers this kind of claim, because even though it is a parental claim, a vaccine-related injury is an injury associated, that's the language of the statute, with a vaccine. And just going through plaintiffs' pleading and the way they plead their claim, it's apparent that this is a vaccine-related injury. But in addition to that, section 22b is even broader because it applies to any civil action for damages arising from a vaccine-related injury. And arising from broadens to a to a broadens the application beyond just vaccine-related injuries themselves, but any damages, any claim for damages arising from a vaccine-related injury. But you've really heard counsel's argument here that the only way we get to this is through suggesting it's another remedy and that the statute be read differently than what you're suggesting is read. I mean, I've read your brief, but the argument is if it's statutory interpretation, I can't just cut out everything else that's in the statute. Your Honor, from reading the plaintiffs' briefs, they appear to be placing heavy reliance on the Schaeffer case from the First Circuit. Right. And the Schaeffer case simply does not apply. Schaeffer related to a different part of the statute, a part of the statute that performs a different function. The part of the statute to which Schaeffer referred and about which Schaeffer made a holding was related to a separate tribunal that the statute creates in which certain plaintiffs can bring claims seeking relief under relaxed standards of proof. And included within that section of the statute, it's the subpart A to which Mr. Keach referred, included within that section of the statute is an exhaustion requirement that says plaintiffs must bring their claims there, and that if plaintiffs accept a claim there, then they are barred from suing a vaccine manufacturer later. That portion of the statute generated an issue, which was whether parent claims or family member claims are also subject to that exhaustion requirement, or if they are also barred if a family — if the directly injured vaccinee accepts an award there. And the courts looked at that, and they said no. That's a different section of the statute. Well, it is, but as you look at the statute as an organic whole, why shouldn't we apply it to this provision? Well, for a couple of reasons, Your Honor. The first reason is the language that Congress used itself. If you look at Schaeffer, which was the first of the cases, and it's particularly at page 5 of that decision, what one sees is that the basis for the holding in Schaeffer was section 11A9 of the statute, which is within that subpart A. In fact, it's within the very subsection of the statute that defines the exhaustion requirement and defines the bar, the bar to bring a tort suit if you accept the remedy from — in that vaccine court. And that section is a narrow one. 11A9 is a narrow section. It reads, this subsection applies only to a person who has sustained a vaccine- related injury or death and who is qualified to file a petition for compensation under the program. Schaeffer relied on that language in reaching the holding that because the family members are not qualified to file a petition for compensation under the program and Justice Breyer italicized that language, because they are not qualified, then they are not subject to that tort suit bar. The reason why that's so important is because of the narrow phrasing. It didn't say this entire statute applies only to people who are qualified to file a petition. It said this subsection. There's no equivalent section like that in subpart B or in section 22B. And that's why I read as a whole, Your Honor, the appropriate course in our submission is to limit Schaeffer to the circumstances in which the language of the statute would indicate it ought to apply. But beyond that, Your Honor, there is nothing unreasonable. Now, it is the plaintiff's burden, we believe, to show that the language of the statute, if applied literally, would lead to an absurd result. So the burden, we think, is there to show that this would be absurd. But even setting that burden aside, there's nothing unreasonable about Congress constructing the statute this way. It's entirely reasonable for Congress and you to have been, if there are going to be lawsuits against vaccine manufacturers, they should all be governed by the same standard. There's no reason in those lawsuits to create one standard for claims brought by others. In fact, that would have been contrary to one of the objectives of the statute, which was to ensure that there are certain defenses available for vaccine manufacturers. That was one of the objectives, to minimize or at least control liability on the part of vaccine manufacturers. And it makes sense to have a single standard that would govern vaccine manufacturer liability and conduct. And we think it is the application of the statute is really especially fair when viewed through the lens of this case, frankly. This was a case in which the vaccine at issue is one that plaintiff's own expert extolled the virtues of. The plaintiff's own expert had no qualms with the vaccine, no qualms with the label, said it was a great vaccine. Plaintiffs themselves have acknowledged in their papers that it has saved millions of lives. They had ample opportunity to try and show that Merck committed the kind of misconduct that the statute says is sufficient to overcome the presumption. They had that opportunity, and they did not, they were not able to make that showing. If your argument is this, then under this statute, are you suggesting that the only way a plaintiff can attack Merck is to say they did not comply with the regulatory obligation? Well, Your Honor, if I could just describe that a little further, they can bring suit successfully if they can overcome the presumption, and that's how they could bring suit successfully on a failure-to-warn claim. But in order to do that, the statute doesn't limit the statute gives them two options, essentially. One of them is to show that Merck failed to disclose information that it was supposed to disclose, and I'm paraphrasing. But the other one is a catch-all, Your Honor, and it simply says if they can show by clear and convincing evidence a lack of due care, notwithstanding compliance with the statute, then that is an additional basis to overcome the presumption. That's fair, Your Honor, in our submission. That is at least fair to plaintiffs as a means of trying to prove a case. So what are the potential causes of action under the statute that one might bring that are not preempted? You're suggesting the failure-to-warn? Failure? Failure to comply with regulatory obligation? Your Honor, I think it would be a – there are three – there are two claims, Your Honor. There's a failure-to-warn claim, and then within that claim, the issue of compliance with regulatory obligations would become a component or a factor in the resolution of that claim due to the presumption. There could be a manufacturing defect claim. And the issue right now that the Supreme Court is considering hearing in the Ferrari case is whether there can be a design defect claim. There are – the Brusewitz case said – and other cases say there is no design defect claim. In Ferrari, the Georgia Supreme Court said there could be. Any further questions? Okay. Thank you, counsel. Thank you. We'll give you two minutes for rebuttal. Thank you very much. I realize our time is very limited today, and we appreciate the big succinct in your presentation. Your Honor, I think it's important to understand what the purpose of Section 22A is, and it's stated – and the congressional – the congressional intent is stated in Brusewitz, where it says, Importantly, the Commerce Report specifically addressed Section 300AA-22, the section at issue here. First, it noted that some provisions of the Vaccine Act would change most state laws related to vaccine injuries and death. Yet, it deemed this an appropriate change in light of the availability of a comprehensive and fair compensation system. In other words, they only put Section 22 in because it provided a compensation system for someone who was injured. The parents don't have that. That's why the congressional intent clearly did not apply to the parents. The court in Brusewitz also states, Part B of the vaccine establishes circumstances under which individuals who have rejected the judgment of the vaccine court may subsequently file suit in state or federal court. Section 22A, entitled Standards of Responsibility, set forth the general rule and exceptions to that rule dealing with that. Again, Your Honor, the point is that in order for that to apply, Congress said we have to give you something. That's why we talked about quid pro quo in our brief. The entire congressional intent is about the quid pro quo. They gave the people who were injured by the vaccine, who were administered the vaccine, a right, a right to pursue remedies under the Compensation Act. They took away, if you disagree, the strict liability claim under 4028 by imposing comment case standards. In order for the court to rule that Subsection 22 applies, it has to find this, that the term vaccine-related death or injury or death, as defined in the statute in Subsection 23, is different in Part A, where Justice Shaffer, where Justice Breyer and Shaffer said, it only applies to people who receive the vaccine, and it's different in Subpart B, which talks about the additional remedies. Because if it's the same, if Justice Breyer is correct and it's the same, a vaccine-related injury or death means someone who received the vaccine, it should be the same in Subpart A and Subpart B, because Subsection 33 doesn't say it applies differently depending upon where you are. And finally, Your Honor, Subpart B, the subsection that contains, the sections that contain Subsection 22 is entitled additional remedies. It's clear the additional remedies are for people who do not accept judgment of the vaccine court. But if these additional remedies are to apply to parents, as Merck contends, what remedies were given to the parents under the Act that these are in addition to? There are none, because the Act doesn't give parents any remedies. That is why, if you read Bruisewitz, you will see congressional intent was clear. Subsection 22 was, a comment K provision was put in there for people and only for people who filed under the Act, rejected the Act, and filed a separate lawsuit. It was never meant, as Justice Breyer stated, to apply to a parent. Thank you, Counsel. Thank you, Your Honor. The case has heard will be submitted. Thank you both for your arguments and briefs. And we'll proceed to the next case on the oral argument calendar, which is United States v. Ramirez. Thank you, Justice Breyer. Thank you.
judges: Fletcher B. , Thomas, Smith R.